UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VALBRUNA SLATER STEEL CORPORATION and FORT WAYNE STEEL CORPORATION, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:10-CV-044 JD ) |
| JOSLYN MANUFACTURING COMPANY, JOSLYN CORPORATION and JOSLYN MANUFACTURING COMPANY, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This is an action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*. wherein plaintiffs Valbruna Slater Steel Corporation and Fort Wayne Steel Corporation (collectively, "plaintiffs") filed a cost recovery claim against defendants Joslyn Manufacturing Company, Joslyn Corporation, and Joslyn Manufacturing Company, LLC (collectively, "defendants" or "Joslyn entities"), who then filed a contribution counterclaim.

More than eight years have passed since this lawsuit began. As a result, the procedural history of this litigation is extensive and much of it has been set forth in prior orders. To quickly summarize, the Court first resolved two motions for summary judgment filed by defendants. After discovery closed, the parties engaged in another round of summary judgment motions— two filed by defendants and one filed by plaintiffs. In ruling on these motions for summary judgment, the Court determined that the defendants were jointly and severally liable for the cost

1

of remediating the contaminated site[1] (thereby entitling plaintiffs to declaratory judgment and payment of future costs). The Court deferred calculating damages until it could be determined what remediation costs were compensable and how those costs were to be equitably allocated [DE 124]. The Court then held trial in two phases—one for determining cost compensability and the other for determining cost contribution. These bench trials resulted in the issuance of extensive findings of fact and conclusions of law [DE 175; DE 182]. In Phase I of trial, the Court held that defendants were strictly liable to plaintiffs for $2,029,871.09 in cleanup costs [DE 175]; and in Phase II of trial, the Court determined that $1,529,871.09 of the recoverable costs were to be allocated 75% to defendants and 25% to plaintiffs (with the same allocation percentages applying to future costs deemed necessary and consistent with the National Contingency Plan) [DE 182].

At this point, the only outstanding issues concern the following: the assessment of remediation costs post-dating December 14, 2016 ("additional costs"); the amount of attorney fees and expenses to be taxed; the proper prejudgment interest to be assessed; and finally, whether or not certain Joslyn entities can escape the entry of final judgment against them in light of defense counsel's eleventh-hour argument that Joslyn Manufacturing Company, LLC, is the only "proper defendant" in this action. Those issues have been briefed by the parties [DEs 185 – 191] and are ripe for the Court's resolution.

---

[1] The "site" refers to the property located at what is presently identified as 2302 and 2400 Taylor Street f/k/a 1701 McKinley Avenue in Fort Wayne, Indiana.

## I. DISCUSSION

**A) Proper Defendants**

During the entire course of this protracted litigation, the defendants have never once (until now) asked the Court to distinguish between the Joslyn entities—that is, Joslyn Manufacturing Company, Joslyn Corporation, and Joslyn Manufacturing Company, LLC.[2]

By way of history, the litigation began in 2010 with plaintiffs' identification of all three Joslyn entities as defendants in the complaint [DE 1]. Ever since the filing of the complaint, the defendants have repeatedly been referred to by the parties and the Court as Joslyn.[3] Defendants then filed an amended answer and counterclaim [DE 59].[4] When plaintiffs moved for summary judgment on the complaint, plaintiffs explicitly sought summary judgment against all of the defendants [DE 102], and plaintiffs' "statement of material facts not in dispute" identified the relationship between each of the Joslyn entities (as derived from the defense's response to interrogatories).[5] In opposing the entry of judgment in plaintiffs' favor [DE 113], the defense

---

[2] Even as of January 2018, the Court stated: "[s]ince the parties have not distinguished the roles of the various Joslyn entities, this award shall apply jointly and severally to Joslyn Manufacturing Company, Joslyn Corporation, and Joslyn Manufacturing Company, LLC." [DE 182 at 17].

[3] At one point, the Court even identified how defendants were privies of Joslyn Manufacturing Company [DE 35 at 13] for the purpose of precluding plaintiffs' claim under Indiana's Environmental Legal Action statute based on res judicata grounds.

[4] While defense counsel appears to have purposefully identified only Joslyn Manufacturing Company, LLC, in the opening paragraphs of the answer and other documents [DEs 59, 96, 97, 113, 152], he did not argue that this entity was the only defendant properly named in the complaint.

[5] *See*, DE 103 at 2, citing DE 28-11 at 3, Defendants' Answers to Plaintiffs' First Set of Interrogatories, stating as follows:
> Joslyn Manufacturing and Supply Company (JMSCO) owned and operated the Site until it was sold to Slater Steels Corporation in 1981. JMSCO became known as Joslyn Manufacturing Company at some point after this sale. The company was

argued solely that the motion for summary judgment should be denied because "Joslyn is not liable under § 107," and, to the extent there exists compensable costs, "Valbruna's equitable share is 100%" based on the counterclaim for contribution. The defense did not assert that plaintiffs failed to sue the proper party, nor did the defense draw a distinction between the Joslyn entities for purposes of liability. In issuing its summary judgment ruling in December 2015, the Court decided the motion on exactly the terms presented by the parties: it found that there was no genuine dispute that the defendants were jointly and severally liable for the costs (including future costs) of remediating the contaminated site, while it deferred the calculation of damages. Because the defendants did not contend that a particular entity could not be held responsible or that liability among the defendants differed, the Court granted the motion for summary judgment in favor of plaintiffs against all of the Joslyn entities named in the complaint.

Three years later, defense counsel now seeks to limit the effect of that order. The defense contends that Joslyn Manufacturing Company, LLC, is the only legal successor to the entity that actually owned and operated the site from 1928 until 1981; and therefore, only Joslyn Manufacturing Company, LLC, should be subject to the judgment in this action. Essentially, defense counsel wants to present its affirmative defense to liability on the part of Joslyn Corporation,[6] notwithstanding the fact that summary judgment as to liability has already been granted on plaintiffs' complaint. In support of this position, defense counsel contends that (1)

---

also reorganized as Joslyn Corporation and as Joslyn Manufacturing Company in later years. Joslyn Manufacturing Company was merged into the current company, Joslyn Manufacturing Company LLC, in 1996. The single member owner of Joslyn Manufacturing Company LLC is Joslyn Company LLC which is owned by Joslyn Holding Company.

[6] Defense counsel concedes that Joslyn Manufacturing Company and Joslyn Manufacturing Company, LLC, are one and the same entity [DE 190 at 1]; and thus, at this time the defense only contests the legitimacy of naming Joslyn Corporation in the judgment.

defendants never waived this argument because throughout the litigation only Joslyn Manufacturing Company, LLC, has responded to discovery and filed documents; and (2) plaintiffs failed to carry their burden in providing evidence to show that Joslyn Corporation is actually liable, given that this entity didn't own or operate the contaminated site and was not in existence when this lawsuit was filed.

The defense's non-waiver argument is disingenuous at best. Creatively docketing filings using the names of all (or some) of the defendants, but then naming only Joslyn Manufacturing Company, LLC, in the actual body of the documents hardly constitutes raising an issue requiring the Court's ruling. *See, e.g.*, Fed. R. Civ. P. 7(b). Moreover, to the extent that not all of the Joslyn entities participated in answering the complaint, then this would support their being defaulted, *see* Fed. R. Civ. P. 55, not support some inference that they claimed to be improperly named in the complaint. In addition, at least two courts of appeals have held that this type of "proper party" defense is indeed an affirmative defense that is waived unless the court grants leave to amend the pleadings. *Jordan v. City of Baton Rouge*, 192 F.3d 125, 1999 WL 683794 at *3 (5th Cir. 1999); *Bokunewicz v. Purolator Prods., Inc.*, 907 F.2d 1396, 1402 (3d Cir. 1990); *see also Grabianski v. Bally Total Fitness Holding Corp.*, 169 F. Supp. 3d 785, 791–92 (N.D. Ill. 2015). Certainly, justice doesn't require allowing defendants to amend their pleadings in this case, *see* Fed. R. Civ. P. 15(a)(2), where for eight years defense counsel has purposefully referred to his clients collectively as "Joslyn," without explicitly differentiating between the entities, and where the liability of all of the defendants was determined over three years ago.

With respect to the alleged lack of evidence proving each of the Joslyn entities' liability, the contention has no merit. Plaintiffs specifically moved for summary judgment on the complaint against all of the defendants, and the Court granted that motion without the defendants

ever drawing a distinction between themselves for purposes of liability. Thus, back in December 2010, the Court determined that each of the Joslyn entities was jointly and severally liable under § 107 of CERCLA. And this Court agrees with the various other district courts in the circuit who have uniformly held that failing to assert an affirmative defense to liability in response to a motion for summary judgment constitutes abandonment of the defense. *E.g.*, *Sunshine Imp & Exp Corp. v. Luxury Car Concierge, Inc.*, No. 13 C 8925, 2015 WL 2193808 (N.D. Ill. May 7, 2015); *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882 (N.D. Ill. 2014); *United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978 (E.D. Wis. 2013). Given that summary judgment is the "put up or shut up" moment in a lawsuit, *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014), it would have been incumbent on defense counsel to raise this "proper party" defense in response to the motion for summary judgment if it could have actually precluded summary judgment against any one of the Joslyn entities. *See Grabianski*, 169 F. Supp. 3d at 791–92. Questioning the Court's liability determination several years later, without any legitimate basis for doing so, does not warrant a revision of the decision. *See* Fed. R. Civ. P. 54(b). Accordingly, the Court denies the defense's untimely and unjustified request to limit its previous liability determination by excluding Joslyn Corporation from the final judgment.

### B) Additional Costs Post-December 14, 2016

The Court previously set forth the legal standard for recoverable costs and expenses under CERCLA [DE 175 at 4], and incorporates that standard herein. In short, to be recoverable, expenses must be both necessary and consistent with the National Contingency Plan. *See id*.

Plaintiffs claim that they have incurred additional costs in the amount of $240,745.69 from December 14, 2016 through March 15, 2018 in responding to the environmental contamination at the site. These additional costs are itemized and supported by their respective

invoices [DE 186-1, Third Affidavit of Jonathan P. Hacker, ¶ 7]. Defendants only contend that $2,174.20 of that amount is not recoverable under CERCLA ("disputed costs")[7]—thus, defendants do not dispute the other $238,571.49 in claimed costs [DE 188 at 1-2]. Defendants argue that the disputed costs were incurred to ensure worker safety in indoor spaces and are, therefore, not compensable. Defendants equate the disputed costs to those expended to install a vapor barrier—which the Court previously concluded were not compensable because the costs did not address a threat to human health or the environment; rather, the evidence demonstrated that the vapor barrier only benefited worker safety [DE 175 at 10-11].

Contrary to defendants' position, Mr. Hacker's affidavit explains that once the site was entered into the Indiana Department of Environmental Management's ("IDEM") Voluntary Remediation Program ("VRP"), plaintiffs have continued to engage in VRP work under IDEM's close supervision in order to address threats posed at the site. Moreover, Mr. Hacker indicates that the disputed costs were actually incurred while conducting VRP work required and overseen by IDEM [DE 186-1, ¶¶ 4, 7]. In fact, plaintiffs confirm that the VRP agreement mandated that vapor intrusion-related work be performed so as to assess risks posed to human health, natural resources, or the environment [DE 191 at 3].

The Court agrees that assessing vapor intrusion or migration of contaminated vapors from the subsurface into buildings is part of plaintiffs' ongoing efforts to monitor, investigate, and address the contamination at the site as required by IDEM. And although the air testing may have also benefited worker safety, the effort was necessary within the meaning of CERCLA to

---

[7] The specific invoices detailing air sampling work completed in early 2017 and 2018 are found at DE 186-1, page 35 (April 2, 2017 SES invoice for $407.60), page 197 (February 4, 2018 SES invoice for $626.40), and page 198 (February 8, 2018 ESC Lab Sciences Invoice for $1,140.00). A typo in the Attachment A spreadsheet concerning another April 2, 2017 SES invoice [DE 186-1, pages 5, 36] brings the disputed costs total to $2,174.20.

help detect and eliminate a possible threat to human health or the environment (as opposed to minimizing the risk of contamination migration, which was the purpose of the vapor barrier). *See Cont'l Title Co. v. Peoples Gas Light & Coke Co.*, No. 96 C 3257, 1999 WL 753933, at *3 (N.D. Ill. Sept. 15, 1999) (noting that site assessment and monitoring costs are compensable even absent any subsequent recoverable response costs). Moreover, plaintiffs chose a cost effective means of monitoring vapor intrusion by utilizing a local consulting firm and working directly with a laboratory to test the environmental samples [DE 186-1, ¶ 6], as opposed to outsourcing this work to more expensive firms. As such, the evidence demonstrates that the disputed costs are compensable.

Consistent with this ruling as to the disputed costs and with defendants' lack of objection to the remaining costs, the Court concludes that the $240,745.69 in additional costs which were incurred by plaintiffs from December 14, 2016 through March 15, 2018 were in response to the environmental contamination at the site and were both necessary and consistent with the National Contingency Plan. Deducting the 25% previously allocated to plaintiffs by the Court [DE 182], results in **$180,559.27** of additional past costs owed by defendants to plaintiffs.

### C) Attorney Fees and Expenses

Plaintiffs claim that they have incurred at least $39,898.69 in reasonable fees and expenses through January 31, 2018 that are recoverable under CERCLA. Plaintiffs submit the following documentation as evidence of these fees and expenses: (1) the affidavit of David L. Hatchett (a named partner of the law firm Hatchett & Hauck LLP, which has represented plaintiffs throughout this matter), that lists the type of work performed [DE 186-2 at 1-3]; (2) Attachment A to Mr. Hattchett's affidavit, which is an itemized listing of plaintiffs' fees and expenses, along with short descriptions of the work performed/expenses incurred, identification

of the billing personnel, and the time billed/amounts charged [DE 186-2 at 4-12]; and (3) Attachment B to Mr. Hatchett's affidavit, which identifies the billing codes and rates for the two attorneys and one law clerk at Hatchett & Hauck LLP who worked on this matter [DE 186-2 at 13-14]. Defendants do not contest the manner in which the fees and expenses have been calculated or contend that they are unreasonable; rather, defendants argue that no fees or expenses are recoverable because the work was done in prosecuting this cost recovery action and "no proof" exists to show that it was not the routine work of lawyers.

In support of their respective positions, both parties rely on *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994)—the seminal decision concerning the recoverability of attorney fees under § 107(a)(4)(B) of CERCLA. In *Key Tronic*, the Supreme Court of the United States held:

> [W]e conclude that CERCLA § 107 does not provide for the award of private litigants attorney's fees associated with bringing a cost recovery action . . .
>
> The conclusion we reach with respect to litigation-related fees does not signify that all payments that happen to be made to a lawyer are unrecoverable expenses under CERCLA. On the contrary, some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B). The component of Key Tronic's claim that covers the work performed in identifying other PRP's falls in this category. Unlike the litigation services at issue in *Alyeska*, these efforts might well be performed by engineers, chemists, private investigators, or other professionals who are not lawyers. As the Tenth Circuit observed, the American rule set out in *Alyeska* does not govern such fees "because they are not incurred in pursuing litigation." *FMC Corp. v. Aero Industries, Inc*., 998 F.2d 842, 847 (1993).
>
> The District Court in this case recognized the role Key Tronic's search for other responsible parties played in uncovering the Air Force's disposal of wastes at the site and in prompting the EPA to initiate its enforcement action against the Air Force. 766 F. Supp. 865, 872, n.4 (E.D. Wash. 1991). Tracking down other responsible solvent polluters increases the probability that a cleanup will be effective and get paid for. Key Tronic is therefore quite right to claim that such efforts significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs. These kinds of activities are recoverable costs of response clearly distinguishable from litigation expenses . . .

> This reasoning does not extend, however, to the legal services performed in connection with the negotiations between Key Tronic and the EPA that culminated in the consent decree. Studies that Key Tronic's counsel prepared or supervised during those negotiations may indeed have aided the EPA and may also have affected the ultimate scope and form of the cleanup. We nevertheless view such work as primarily protecting Key Tronic's interests as a defendant in the proceedings that established the extent of its liability. As such, these services do not constitute "necessary costs of response" and are not recoverable under CERCLA.

*Key Tronic*, 511 U.S. at 819–21.

In commenting on the decision in *Key Tronic*, the Seventh Circuit noted in *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994) that the Supreme Court left "the door open to the recoupment of fees for 'lawyers' work that is closely tied to the actual cleanup' of a site, . . . but preclude[d] the recovery of fees incurred in connection with bringing a cost recovery or contribution suit against other PRPs or in defending the plaintiff's interests in settlement negotiations or other proceedings establishing the extent of its liability . . . ". 30 F.3d at 767 n.10 (internal citations omitted). Then in *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342 (7th Cir. 1997), the Seventh Circuit again recognized *Key Tronic's* holding that attorney fees do not generally qualify as response costs under § 107; however, it noted that *Key Tronic* created a "narrow exception" for attorney fees "not incurred in pursuing litigation" for the reason that "only attorney fees paid for services like identifying potentially responsible parties qualified as response costs because those types of tasks 'might well be performed by engineers, chemists, [or] private investigators.'" *Datacard Corp.*, 106 F.3d at 1349 (reversing the district court's award of attorney fees under § 107 because "Datacard's nonlitigation attorney fees were racked up investigating Datacard's own legal responsibilities in dealing with the Ohio EPA, not in identifying other polluters. This was not work which could have been done by engineers or chemists; it was work done with an eye toward going after AMI.") (citation omitted).

Following the *Key Tronic* decision, lower courts have held the following types of counsel fees to be recoverable in CERCLA actions: (1) those incurred in connection with the search for potentially responsible parties; (2) fees related to client conferences regarding site work and cleanup matters, site visits to review cleanup, and conferences with technical staff; (3) fees associated with investigatory efforts to identify contaminants on the property; and (4) fees related to costs of EPA monitoring or oversight of remedial action. *Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946, 959 n.13 (N.D. Ill. 2006) (citing *Sealy Connecticut, Inc. v. Litton Industries, Inc.*, 93 F. Supp. 2d 177, 190–91 (D. Conn. 2000)). In contrast, the following types of costs have been found not recoverable under CERCLA: (1) costs incurred in negotiating a consent decree with the EPA; and (2) costs of audits conducted by plaintiffs to review expenses charged by the EPA and concerning how much plaintiffs owed with regard to the cleanup. *Id*.

In the instant case, Plaintiffs argue that their approximate $40,000.00 in line-item billables (which were plucked from "thousands of hours" of litigation-related work), along with Mr. Hatchett's sworn affidavit, adequately demonstrate that their expenses are compensable under CERCLA. On the other hand, defendants contend that the work performed was for the purpose of prosecuting this action or otherwise consisted of routine work done by experienced environmental trial lawyers, which is not compensable.

The Court concludes that the sparse descriptions of the work performed over the course of ten years provides an insufficient context for it to determine whether the expenses were associated with bringing this cost recovery action or whether the work might well have been performed by other professionals who are not lawyers. *See, e.g.,* 14 Bus. & Com. Litig. Fed. Cts. § 151:34 Attorney's fees (4th ed.); 1 RCRA and Superfund: A Practice Guide, 3d § 9:108 Non-recoverable costs (2018); 1 RCRA and Superfund: A Practice Guide, 3d § 11:18 National

Contingency Plan (NCP)—Cost recovery litigation (2018); 2 RCRA and Superfund: A Practice Guide, 3d § 14:32 Section 107 actions—Recoverable response costs—Types of costs recoverable (2018). While it may be that some fees relating to identifying PRPs, dealing with IDEM's regulatory system, and navigating the VRP fall into those categories that courts have found to be recoverable under CERCLA, *see*, *e.g.*, *Padgett Bros. LLC v. A.L. Ross & Sons, Inc.*, No. 1:10-CV-00858-RLY-DM, 2014 WL 5023625, at *4 (S.D. Ind. Oct. 8, 2014) (reasoning that the purpose of the VRP is to remediate rather than to limit liability), the Court is unable to make this determination based on the evidence presented. By way of example, after purchasing the site in April 2004, plaintiffs put Joslyn Manufacturing Company and Danaher Corporation on notice in March 2008 that they were responsible parties [Plfs' Exhibit 11, Phase I of Trial]. Yet, plaintiffs billed for researching the site's history and defendants' corporate history on multiple occasions in 2009 [DE 186-2 at 5]. So, again, the vague billing entries for the work performed throughout the past ten years do not provide sufficient information for the Court to determine whether the expenses were necessary costs of the response or for the purpose of going after defendants to recoup the costs. As a result, the parties will need to confer and indicate to the Court how they intend to proceed with respect to this issue. At a minimum, plaintiffs' counsel will need to provide a more complete explanation for why each expense was incurred and how that meets the standard for payment.

**D) Prejudgment Interest**

Plaintiffs seek prejudgment interest pursuant to § 107(a)(4). Defendants do not dispute that the award of interest is mandatory under 42 U.S.C. § 9607,[8] which states:

---

[8] Defendants also do not dispute that the rates are determined by the Secretary of the Treasury based on the relevant time frame. *See* 42 U.S.C. § 9607 ("The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is

> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned.

42 U.S.C. § 9607(a)(4).

Rather, the dispute concerns *when* the prejudgment interest starts to accrue. Plaintiffs argue that interest started accruing in 2008 and identifies four documents that could constitute sufficient written demands: a letter sent to defendants in March 2008 [Plfs' Exhibit 11, Phase I of Trial]; a letter sent to defendants in March 2009 [Plfs' Exhibit 12, Phase I of Trial]; the complaint filed against defendants in February 2010 [DE 1]; and, Plaintiffs' Rule 26 Initial Disclosures served on the defense in July 2013 [DE 91-1]. Defendants argue that interest started accruing in June 2014, when plaintiffs first sent defendants a disk of paid invoices and demanded reimbursement [DE 188-1; DE 188-3].

Again, CERCLA provides that prejudgment interest begins to "accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." 42 U.S.C. § 6907(a). Given the statute's requirement that a written demand be for a specified amount, some courts have declined to order prejudgment interest where the demand was insufficient. *United States v. Consolidation Coal Co.*, 345 F.3d 409, 416 (6th Cir. 2003) (holding that a third-party complaint seeking a total response cost of $47 million from 59 defendants was insufficiently specific as to each defendant to satisfy the statutory prerequisite for

---

specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26."); 26 U.S.C. § 9507 ("Interest on advances made to the Superfund shall be at a rate determined by the Secretary of the Treasury (as of the close of the calendar month preceding the month in which the advance is made) to be equal to the current average market yield on outstanding marketable obligations of the United States with remaining periods to maturity comparable to the anticipated period during which the advance will be outstanding and shall be compounded annually.").

an award of prejudgment interest); *State of Colorado v. United States*, 867 F. Supp. 948, 950 (D. Colo. 1994) (complaint that sought response costs but failed to specify an amount could not satisfy the demand requirement). In cases in which some amount of damages was specified in the complaint (or other accompanying document), even if broadly identified, courts have awarded prejudgment interest from the date of the complaint's filing. *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1019 (8th Cir. 2007) (holding that the district court did not abuse its discretion in awarding prejudgment interest where the demand included specific amounts but did not specify the amount sought from each third-party defendant); *Bancamerica Comm. Corp. v. Mosher Steel of Kansas, Inc.,* 100 F.3d 792, 801, *amended by* 103 F.3d 80 (10th Cir. 1996) (holding that the district court abused its discretion by refusing to grant an award of prejudgment interest where plaintiff's complaint alleged it was seeking reimbursement plus interest for response costs "in excess of $1 million"); *Dow Chem. Co. v. Sinclair Oil Corp.*, 3 F. Supp. 2d 1252, 1253–54 (D. Wyo. 1998) (allowing recovery of prejudgment interest where complaint did not specify an amount, but where it was simultaneously filed with a computation of damages which stated expenditures "in excess of $3,450,000"); *United States v. Hardage*, 750 F. Supp. 1460, 1505-06 (W.D. Okla. 1990) (complaint requested payment of a specified amount).

And yet, while the statute plainly requires a written demand for a specified amount, several courts have opined that CERCLA does not require a plaintiff to demand a dollar amount; rather, plaintiff's demand must only give defendants full knowledge of their contaminating activities which gave rise to the response costs. *Matter of Bell Petroleum Services, Inc.*, 3 F.3d 889, 908 (5th Cir. 1993) (reasoning that notices to Sequa that it was potentially a responsible party did not satisfy the statute, but awarding prejudgment interest from the date of the complaint because "[a]lthough the complaint does not specify an exact amount . . . it constitutes a sufficient

written demand for payment"); *see also Pakootas v. Teck Cominco Metals, Ltd*., No. CV-04-0256-LRS, 2016 WL 4258929, at *15 (E.D. Wash. Aug. 12, 2016) (summarily concluding that "[f]iling a complaint to recover response costs is a sufficient 'demand' to trigger interest accrual"); *Pentair Thermal Management, LLC v. Rowe Industries, Inc*., 2013 WL 1320422 (N.D. Cal. 2013) (court awarded prejudgment interest from the date the defendant was served with the first amended complaint, even though this pleading did not include a dollar amount and simply requested "all necessary Response Cost incurred by Plaintiff in responding to the released Hazardous Substances" under 42 U.S.C. § 9607(a)); *Appleton Papers Inc. v. George A. Whiting Paper Co*., No. 08-C-16, 2012 WL 2704920, at *15–16 (E.D. Wis. July 3, 2012) (allowing recovery of prejudgment interest where complaint did not specify an amount).

As one district court noted in considering the statute's demand requirement, on the one hand, the statute states unequivocally that interest accrues from the date a "specified amount is demanded in writing"; on the other hand, "denying an award of prejudgment interest [for failure to specify a dollar amount] would effectively penalize a party who timely paid under the statute, and could provide a windfall to a party who either attempted to frustrate or delay attainment of CERCLA's goals." *Pentair Thermal Mgmt.,* 2013 WL 1320422, at *27 (quoting *Dow Chem. Co.*, 3 F. Supp. 2d at 1254). Furthermore, CERCLA requires substantial compliance, not a checklist approach, because the latter could "defeat cost recovery for meritorious cleanup actions based on a mere technical failure by the private party." *Id*. (citing *Carson Harbor Vill., Ltd. v. Unocal Corp*., 287 F. Supp. 2d 1118, 1160 (C.D. Cal. 2003)) (internal citation and quotation marks omitted).

In this case, plaintiffs assert that the demand requirement was met by either (1) their letters sent to defendants indicating that plaintiffs believed that defendants were responsible for

15

all of the costs and damages incurred due to the contamination; or (2) the complaint which lodged a cost recovery claim against defendants under CERCLA for the expenses associated with the cleanup. Yet, none of these documents bothered to specify any dollar amount. Rather, the documents simply indicate plaintiffs' allegation that defendants were responsible for all costs of the cleanup. Again, the statute clearly and unambiguously requires a written demand for a "specified amount." 42 U.S.C. § 9607(a)(4). And the majority of cases demonstrate that while an exact amount need not be demanded, some specified amount must be identified. Ultimately, in order to recover all the prejudgment interest to which plaintiffs are entitled, they needed only to send a letter demanding payment of the amount of the expenditures. It wasn't until plaintiffs served their Rule 26 initial disclosures that they finally cited a specific amount, contending that defendants were liable for payment of "at least $1.863 million" that had been spent since 2004 investigating and remediating the site, with "much more" to be spent in the future [DE 91-1 at 4]. Thus, having considered the plain language of the statute and the persuasive value of the case precedent on this issue, the Court finds that the demand requirement was not satisfied until July 11, 2013, when plaintiffs demanded payment of a specified amount in writing. Subsequent revisions to amounts claimed do not alter the demand date from which interest is calculated. *Matter of Bell Petroleum Servs., Inc.*, 3 F.3d at 908; *Pakootas*, 2016 WL 4258929, at *15 (citing *Raytheon Aircraft Co. v. United States*, 556 F. Supp. 2d 1265, 1296-97 (D. Kan. 2008)). The Court therefore holds that, with respect to costs incurred before the Rule 26 initial disclosures were made, prejudgment interest should be assessed from the date the disclosures were served. With respect to costs incurred after service of the Rule 26 initial disclosures, prejudgment interest should be assessed on those costs from the date of the expenditures.

## II. CONCLUSION

Because the Court is unable to compute the amount of compensable attorney fees and expenses, as explained herein, final judgment will be withheld pending resolution of this remaining issue. The parties are to file a joint status report no later than June 1, 2018, indicating how they intend to proceed. For instance, the parties might come to an agreement regarding the appropriate amount or plaintiffs' counsel might choose to supplement their submission consistent with the Court's expressed concerns.

SO ORDERED.

ENTERED: May 22, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court